**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Fortistar Methane LLC,

Plaintiff,

v.

**ORDER**
Civil File No. 00-1912 (MJD/SRN)

Neo Corporation,

Defendant.

This matter is before the Court on Defendant's motion to dismiss for failure to join an indispensable party under Fed. R. Civ. P. 19(a), and for failure to state a claim under Fed. R. Civ. P. 12 (b)(6). Plaintiff Fortistar Methane LLC ("Fortistar") is a limited liability company incorporated in Delaware, with its principal place of business in New York. Defendant NEO Corporation ("NEO") is incorporated and has its principal place of business in Minnesota. Defendant and Plaintiff each own fifty percent interest in a third company, Minnesota Methane LLC ("MN Methane"), a limited liability company incorporated in Delaware, with its principal place of business in Minnesota.

Fortistar purchased the fifty percent interest in MN Methane effective August 31, 1998. Also on that date, Fortistar and NEO entered into an "Amended and Restated Operating Agreement of Minnesota Methane LLC" ("Operating Agreement") to provide for the operation and management of MN Methane, which owns and operates fifteen



FILED 1/19/01
FRANCIS E. DOSAL, CLERK JAN 19 2001
JUDGMENT ENTD
DEPUTY CLERK

landfill, gas-fired, electric generating facilities. NEO developed these fifteen facilities and transferred them to MN Methane during the period October 1, 1998 to September, 1999.

As part of the agreements between the parties, Fortistar contributed capital to MN Methane, which was to be used primarily to pay NEO for the fifteen facilities purchased by MN Methane, and to be distributed among the operating subsidiaries of MN Methane. Fortistar also participated in obtaining a loan to MN Methane for additional operating capital from Lyon Credit Corporation (now United Capital), in the amount of $57.9 million. The Operating Agreement states that the amount of the capital contributions and loan were based on the sum of the projected cash flows for the fifteen facilities, which NEO prepared.

Fortistar filed this action on May 4, 2000, alleging that NEO breached the Operating Agreement by keeping "unilateral management" of MN Methane, which infringed upon the Executive Financial Officer's powers, endangered the loan, and jeopardized the existence of MN Methane. The Complaint also alleges that NEO committed this violation in order to conceal the fraud it had committed in the financial disclosures provided in connection with Fortistar's purchase of the fifty percent interest in Minnesota Methane. Fortistar claims that NEO overstated its projected cash flows by at least $1.25 million annually. Plaintiff, according to the Complaint, invested equity on the basis of an agreed upon rate of return, the size of the portfolio, and twenty years of projected cash flows. The Complaint alleges that NEO purposely withheld financial information required to be given to Fortistar, until after the last project was transferred from NEO to MN Methane in September, 1999.

Plaintiff also alleges that Fortistar's fifty percent interest in MN Methane was a security within the meaning of Section 10(b) of the Securities Exchange Act of 1934, and therefore the deceptive cash flow projects given to Fortistar in connection with the purchase constituted a §10(b) violation. Finally, Plaintiff alleges that NEO's actions constitute a breach of the representations and warranties made to Fortistar in connection with Fortistar's purchase of the fifty percent interest in MN Methane.

The case was transferred from New York District Court to this Court in August. On October 5, 2000, United Capital, the lender, obtained a "Waiver of Default Agreement" from both NEO and Fortistar, which places the management of MN Methane under a Special Advisor.

Standard

Under R. 19 of the Fed. R. Civ. P., if a party is "indispensable" to a lawsuit, dismissal is warranted according to R. 12 (b)(7). To determine if a party is indispensable, the Court must first determine if the absent party's interest in the subject matter of the lawsuit is sufficient to satisfy one or more of the tests set forth in R. 19(a), such that they should be joined if possible. 7 Wright & Miller, §1604 at 40. If R. 19(a) is satisfied, then the Court must decide whether joinder is feasible. If the absent person cannot be joined for some reason, (such as the destruction of jurisdiction) the Court must decide whether the person is "indispensable" under R. 19(b), such that the action cannot consider in "inequity and good conscience" without that party. Fed. R. Civ. P. 19(b).

The elements to consider in R. 19(a) and R. 19(b) are similar. "Generally, one is an indispensable party when the case cannot be decide on its merits without prejudicing

the rights of that party." Merchants Nat'l Bank of Winona v. Hartford Accident & Indem. Co., 377 F. Supp. 1344, 1345 (D. Minn. 1974).

Under Fed. R. Civ. P. 12(b)(6), a Complaint should be dismissed if it fails to state a claim upon which relief can be granted. The Court must accept as true the material facts alleged in the Complaint, and dismissal is appropriate if Plaintiff can prove no set of facts that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 46 (1957).

## Analysis

### I) **Motion to Dismiss for Failure to Join a Necessary Party**

Rule 19 (a) enumerates the factors to consider when determining if a party must be joined. Under R.19(a)(2), if a "person claim[s] an interest relating to the subject of the action...and disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest...", then that party must be joined if feasible. Fed. R. Civ. P. 19(a)(2)(i). MN Methane falls into this category.

As a limited liability company, one of whose members is seeking distribution of its funds and fundamental changes in its management, MN Methane has an obvious "interest relating to the subject of the action." The Complaint seeks an injunction "barring NEO from interfering with the management of Minnesota Methane as a separate independent company" and "barring NEO from participating in the day-to-day management of Minnesota Methane." Compl. ¶¶92(a), (c). In order to protect these financial and managerial interests, MN Methane must be joined as a party to this action.

Fortistar claims to share the same interest with MN Methane in establishing the facts, citing Gwartz v. Jefferson Mem'l Hosp. Ass'n, 23 F.3d 1426 (8th Cir. 1994). Unlike

in Gwartz, however, where the sole shareholder, officer and director of a professional corporation was allowed to represent the interests of the corporation, Fortistar is not the sole member of MN Methane. The members of this LLC are in fact in conflict with one another. The presence of both before the Court is not enough to protect the interests of MN Methane, since MN Methane has interests distinct from those of both Plaintiff and Defendant. See Weber v. King, 110 F.Supp. 2d 124, 128 (E.D.N.Y. 2000)(finding that an LLC is an indispensable party to a lawsuit between its members); Cabrini Dev. Council v. LCA-Vision, Inc., 197 F.R.D. 90, 95 (S.D.N.Y. 2000)(same). If Fortistar were to prevail in its requested relief, NEO would be barred from management of the company which it developed. The loss of this management and technical experience would cause MN Methane to incur potentially significant costs. In addition, replacement of any members of the Operating Committee without prior approval of the lenders would be a breach of MN Methane's lending agreements and could cause it to default on those loans. Finally, Fortistar is seeking a dispersal of funds from MN Methane. Since Fortistar will benefit directly from something that could harm MN Methane, it cannot objectively represent MN Methane's interests. See Weber, 110 F.Supp. 2d at 128.

MN Methane is therefore a necessary party. Under Rule 19, once a party is found to be necessary, the Court must determine if joinder is feasible. Plaintiff is a citizen of New York, and Defendant is a citizen of Minnesota. An LLC is a citizen of every state in which any of its members is a citizen. See, e.g. Cosgrove v. Bartolotta, 150 F.3d 729,731 (7th Cir. 1998). MN Methane, therefore, is a citizen of both New York and Minnesota, and its joinder would defeat diversity jurisdiction.

If joinder is not feasible, the Court must decide if the party is indispensable under

R.19(b), such that the action cannot "in equity and good conscience" proceed in its absence. Fed. R. Civ. P. 19(b); Mille Lacs Bd. of Chippewa Indians v. State of Minnesota, 853 F.Supp. 1118, 1130 (D. Minn. 1994). The R.19(b) factors are: 1) the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties;" (2) "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;" 3) "whether a judgment rendered in the person's absence will be adequate;" and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b). An analysis of MN Methane's status under the R.19(b) factors demonstrates that MN Methane's presence is indeed indispensable.

The absence of MN Methane will prejudice its ability to protect its interests in the subject matter of the instant action, and to protect itself from future litigation. As demonstrated in the R.19(a) analysis, the Complaint deeply implicates the interests of MN Methane, for it seeks to change the management and financial control of the company. As in Weber and Cabrini, the protection of the LLC's interests lie at the core of the action, and the claims involve alleged harm to the LLC, as distinct from the members. See Cabrini, 197 F.R.D. at 96, citing Weber, 110 F.Supp. 2d at 129-30. In addition to the R.19(a) factors, supra, if Plaintiff prevailed in its requested relief, a distribution of funds could cause MN Methane to be unable to meet its financial obligations.

Given the extent to which the interests and activities of the four members of the Operating Committee are entangled both with their home companies and with MN

Methane, and the type of relief requested by Plaintiff, protective measures (such as alternative forms of relief) to lessen this prejudice would not be adequate. Furthermore, any judgment rendered in MN Methane's absence will be inadequate, because it leaves open the possibility of subsequent lawsuit being filed against either party by the nonparty, potentially yielding an inconsistent result. Finally, Plaintiff has an adequate remedy, namely to file the dispute in state court.

MN Methane is therefore an indispensable party, and the Court cannot resolve the issues before it in "equity and good conscience" without the joinder of MN Methane. Fed. R. Civ. P. 19(b).

**II) <u>Motion to Dismiss for Failure to State a Claim</u>**

In order to state a claim under §10b-5 of the Security Exchange Act of 1934 ("Exchange Act"), Plaintiff must allege fraud or deceit "in connection with the purchase or sale of any security." See 17 C.F.R. §240.10b-5. [1] Plaintiff asserts that Fortistar's fifty percent interest in MN Methane qualifies as a security because it meets the test of an "investment contract" as defined by the Supreme Court in the four-part <u>Howey</u> test. <u>Sec. Exch. Comm'n v. W.J. Howey Co.,</u> 328 U.S. 293, 298-99 (1946); <u>Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.</u>, 198 F.3d 685, 700 (8th Cir. 1999). Under <u>Howey</u>, an investment contract is one which includes a) an agreement; b) to invest

[1]Under the Exchange Act, a "security" is defined as:

"....[A]ny note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing Agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, or group or index of securities...or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; ..." 15 U.S.C. § 78c(a)(10).

money; c) in a common enterprise; d) with the expectation of deriving profits solely from the efforts of others. Howey, 328 U.S. at 298-99. Plaintiff's argument fails on the fourth prong of the test, "deriving profits solely from the efforts of others".

The Eighth Circuit standard for this prong of the Howey test rests on an analysis of the actual expertise and bargaining power of the parties. See Less v. Lurie, 789 F.2d 624, 627, citing Fargo Partners v. Dain, 540 F.2d 912, 915 (8th Cir. 1976); Schultz v. Dain Corp., 568 F.2d 612, 614 (8th Cir. 1978); In re Prof'l Fin. Management, Ltd., 692 F.Supp. 1057, 1062 (D. Minn.1988). In Fargo Partners, the Court held that Plaintiff was not merely relying on the efforts of others to make a profit in an apartment development, even though Defendant was responsible for virtually all aspects of management of the property. 540 F.2d at 914. The Court found that because Plaintiff reserved the right to fire Defendant as its manager on thirty day's notice, Plaintiff retained ultimate control of the operation and thus was not a mere passive investor. Id. The Court noted that this was not a case where "a small investor is helplessly reliant on the promoter's efforts because of lack of business knowledge, finances, or control over the operation" and that Plaintiff had invested over three million dollars. Id.

Under the Fargo Partners standard, Fortistar does not qualify as a passive investor in MN Methane. Plaintiff holds two of the four manager seats on MN Methane's Operating Committee, which is powerless to act unless at least one member appointed by Fortistar is present. Operating Agreement §8.02(b). Fortistar has the power to remove and replace any manager it appoints, with or without cause. Id. at §802(a). Without approval of the Operating Committee, "no act shall be taken, sum expended, decision made or obligation incurred by the Company, the Executive Operating Officer,

Executive Financial Officer or any Member with respect to any Major Decisions..." Id. at §802(f). Fortistar is clearly not a small investor, "helplessly reliant" on NEO.

Fortistar's fifty percent interest in MN Methane is therefore not a "security" under the meaning of the Exchange Act. 15 U.S.C. §78c(a)(10). This holding is consistent with recent decisions concerning LLC's in other jurisdictions. See, e.g., Great Lakes Chem. Corp. v. Monsanto Co., 2000 WL 685002, *18-*20 (D. Del.)(holding that defendants who together owned 100 percent of an LLC membership interest and retained authority to remove managers did not hold "an investment contract"); Keith v. Black Diamond Advisors, Inc., 48 F.Supp. 2d 326, 332 (S.D.N.Y. 1999); KFC Ventures, L.L.C. v. Metairie Med. Equip. Leasing Corp. et al., 2000 WL 726877 (E.D. La.).

Plaintiff asserts that even if the investment did not qualify as a security at the time it was purchased, the appointment of a Special Advisor by the lender has transformed it into one now. The Court is not persuaded by this argument. In order to have standing to sue under §10b-5 of the Exchange Act, the alleged fraud must be "attendant upon the purchase or sale of securities." See Howey, 328 U.S. at 299; Bailey v. Piper, Jaffray & Hopwood, Inc., 414 F.Supp. 475, 482-83 (D.Minn. 1976). Therefore, the relevant inquiry is the status of the interests, and the plaintiff's expectations, at the time of purchase. Even if the interests are somehow deemed later transformed into securities, a violation of the §10b-5 will not lie. See Keith v. Black Diamond Advisors, Inc. 48 F.Supp.2d 326, 334 (S.D.N.Y. 1999). The claim for violation of §10b-5 of the Securities and Exchange Act of 1934 therefore must be dismissed.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss for failure to join an indispensable party is GRANTED.

2. Defendant's motion to dismiss for failure to state a claim is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: JAN. 19, 2001.

Michael J. Davis
United States District Court Judge

Fortistar Methane LLC
v. NEO Corporation
Civil File No. 00-1912

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd